IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-00396-FL

JOSEPH BULLOCK,               )
                              )
        Plaintiff,            )
                              )
v.                            )
                              )          **MEMORANDUM &**
                              )          **RECOMMENDATION**
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security,                     )
                              )
        Defendant.            )
_____     )

This matter is before the Court upon Plaintiff's and Defendant's motions for judgment on the pleadings. [DE-26, 28]. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's motion for judgment on the pleadings [DE-26] be DENIED, that Defendant's motion for judgment on the pleadings [DE-28] be GRANTED, and that the final decision by Defendant be AFFIRMED.

## I.    Statement of the Case

Plaintiff applied for supplemental security income benefits ("SSI") on July 31, 2006, alleging that he became unable to work on June 19, 2006. [DE-16, p.2]. His application was denied initially and upon reconsideration. [DE-15]. An Administrative Law Judge ("ALJ") held a hearing on the matter December 22, 2008 and, in a decision dated January 13, 2009, determined

1

Plaintiff was not disabled. [DE-13, pp.7-18]. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on July 27, 2010, rendering the ALJ's determination as Defendant's final decision. [DE-13, p.2]. Plaintiff filed this action on September 23, 2010. [DE-4].

## II.    Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.

"Under the Social Security Act, [the court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

The Social Security Administration has promulgated the following regulations establishing a sequential evaluation process to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

## III.    ALJ's Findings

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment. [DE-13, p.13]. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) history of sarcoidosis; (2) history of hypertension; and (3) limited intellectual functioning. [DE-13, p.13]. However, the ALJ determined that these impairments or combination of impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. [DE-13, p.13]. Based on the record as a whole, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c). [DE-13, p.15]. As such, the ALJ found Plaintiff capable of performing his past relevant work as a janitor. [DE-13, p.18]. Thus, concluded the ALJ, Plaintiff had not been under a disability as defined in the Social Security Act since July 18, 2006, the date he filed his application. [DE-13, pp.18-19]. The ALJ therefore denied Plaintiff's

3

application for SSI.

The ALJ's findings were based upon the following substantial evidence in the record.

## IV.    Plaintiff's Testimony and Other Evidence of Record

Plaintiff testified he was born May 15, 1962; he was forty-six years old at the time of his hearing before the ALJ.   [DE-13, p.23].   He attended mainstream classes at Vance Senior High School in Henderson, North Carolina, through the tenth grade.   [DE-13, pp.23-24].   Plaintiff worked as a school janitor for four years, then found work installing vinyl siding with C.J. Valence and Construction, where he worked regularly for eight years.   [DE-13, pp.26; DE-17, p.4].   He also had experience processing tobacco.   [DE-13, p.29].   These positions did not require him to submit written reports or use a computer.   [DE-13, p.33].   Plaintiff testified he has no difficulty reading or writing, however.   [DE-13, p.25].   For example, he sometimes reads the Bible at home.   [DE-13, p.34].   Plaintiff has never possessed a driver's license.   [DE-13, p.28].

Plaintiff resides with his mother and stepfather.   [DE-13, p.25].   He testified he typically spends his time watching television.   [DE-13, pp.27,29].   Plaintiff is most comfortable lying down, which he does "[m]ostly the whole day."   [DE-13, p.29].   He does not cook, but he makes light fare, such as sandwiches.   He cleans his room occasionally by making his bed and generally straightening up.   His back pain prevents him from vacuuming or sweeping, however.   [DE-13, p.28].   He attends church "[e]very once in a while" but must "get up and walk around a lot" during the service.   [DE-13, p.29].   He has difficulty lifting items heavier than a gallon of milk.   [DE-13, p.31].   He is uncomfortable sitting for extended periods and has problems reaching over his head, kneeling, bending, and pushing.   [DE-13, pp.31-32].   Plaintiff cannot walk very far before he "get[s] out of breath."   [DE-13, p.32].   On the advice of his doctor, Plaintiff uses a cane.   [DE-13, p.31].

4

Plaintiff testified he left his vinyl siding employment on February 15, 2005 because he could no longer climb ladders. On his disability report, however, Plaintiff stated he left because his "employer was cheating [him] out of [his] money." [DE-17, p.3; DE-13, p.34]. Plaintiff explained at the hearing that both factors led him to quit his job. [DE-13, p.34].

Plaintiff also introduced additional evidence in support of his claim, summarized in pertinent part as follows:

Psychologist Walter Sellers evaluated Plaintiff on July 25, 2006, to assess his overall intellectual functioning and academic skills, as well as to assist him with vocational planning. Dr. Sellers found that Plaintiff's "overall level of intellectual functioning tests out within the mildly retarded range." [DE-20, p.6]. Specifically, "[o]n the WAIS-III [Plaintiff] earned a Full Scale IQ of 65, with Verbal and Performance IQs of 66 and 70 respectively." [*Id.*].

Medical consultant Steven E. Salmony, Ph.D., conducted a mental residual functional capacity assessment on August 18, 2006. [DE-20, p.11]. Dr. Salmony diagnosed Plaintiff with mild mental retardation and determined that: Plaintiff was able to understand and remember simple three-step instructions; could sustain sufficient attention to complete simple routine tasks for a two-hour period at a non-production pace; could accept direction from a supervisor and maintain adequate relationships with co-workers in a work setting with no extensive social interaction; would have some difficulty adapting to changes in the workplace, but should be able to function with a stable work assignment; was able to complete simple repetitive routine tasks. [DE-20, pp.11, 17]. Dr. Salmony believed Plaintiff was able to meet the demands of unskilled work. [DE-20, p.25].

A medical evaluation completed by Dr. Margaret Barham on December 13, 2006 noted that Plaintiff's "thinking [was] adequately organized and logical with no evidence of confusion or

5

illogical thought process." Plaintiff was attentive, alert and cooperative, his "[p]erceptual functioning [was] intact," and his affect and mood were appropriate. [DE-20, p.43]. His insight, self-awareness, and judgment were poor, however. Dr. Barham noted Plaintiff's IQ score was 65, with a reading grade equivalent of 3.2, a spelling grade equivalent of 3.5., and a math grade equivalent of 3.7. [DE-20, p.43]. According to Dr. Barham's notes, a third party reported Plaintiff was "able to bathe, clean his room, take meds, watch TV, [and] talk on the phone with friends." [DE-20, p.43]. In addition, Plaintiff maintained an aquarium at home by feeding the fish and cleaning the tank. He also shopped for groceries and clothes, paid bills and counted money, and attended church. Although Plaintiff had "[t]rouble understanding what he reads" he was "[a]ble to follow spoken instructions" and had "average attention skills." [DE-20, p.43].

Plaintiff also introduced his school records, much of which is unfortunately illegible. [DE-17, pp.30-32]. The school records show that Plaintiff received mostly Cs, with some Bs and Ds until fifth grade, at which point his grades declined to primarily Ds. Plaintiff dropped out of school during the eleventh grade.

Plaintiff submitted additional medical evidence detailing his treatment for hypertension and sarcoidosis, the details of which need not be related here, given the nature of Plaintiff's assignments of error. Further facts are set out as necessary in evaluating Plaintiff's arguments.

## V. Analysis of Plaintiff's Arguments

Plaintiff argues the ALJ committed reversible error by (1) finding that his mental retardation did not meet the requirements of Listing 12.05; (2) failing to properly evaluate his mental residual functional capacity ("RFC"); and (3) failing to make specific findings regarding the physical and mental demands of his past relevant work.

### A. Listing 12.05, Mental retardation

6

Plaintiff contends the ALJ erred by finding that his impairment does not meet or equal Listing 12.05, the listing for mental retardation. Plaintiff bears the burden of demonstrating that his impairments meet or equal a listed impairment. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Listing 12.05 sets forth a two-part inquiry for determining whether a claimant meets the requirements for mental retardation. Norris v. Astrue, No. 7:07-CV-184-FL, 2008 U.S. Dist. LEXIS 92635, at *5 (E.D.N.C. Nov. 14, 2008)) (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05). First, a claimant must satisfy the diagnostic description of mental retardation, which requires a showing of "'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. . . . before age 22.'" Id. (quoting 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05). "Only if a claimant has 'significantly subaverage general intellectual functioning with deficits in adaptive functioning' which manifested before age 22 does the inquiry move on to whether subparts A, B, C, or D are satisfied." Id.; see also Wynne ex rel. Pennell v. Astrue, No. 5:09-CV-367-FL, 2010 U.S. Dist. LEXIS 58884, at *10-12 (E.D.N.C. May 21, 2010); Justice v. Barnhart, 431 F. Supp. 2d 617, 619 (W.D. Va. 2006) ("[E]ven if the record clearly establishes that the plaintiff meets the [severity] requirements of [Listing 12.05C], a finding of mental retardation cannot be warranted without a finding that the plaintiff manifested deficits in adaptive functioning before age 22").

Because Listing 12.05 does not define "adaptive functioning," courts look to the definitions used by leading professional organizations for guidance. See Dixon v. Astrue, 148 Soc. Sec. Rep. Service 228, No. 7:08-CV-218-FL, 2009 U.S. Dist. LEXIS 113346, at *6-7 n.1 (E.D.N.C. Dec. 4, 2009). According to the American Psychiatric Association's fourth edition of its *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"):

"The essential feature of Mental Retardation is significantly subaverage general intellectual functioning that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. The onset must occur before age 18 years."

Norris, 2008 U.S. Dist. LEXIS 92635 at *8 n.2 (quoting DSM-IV at 41). "Crucially, the DSM-IV

. . . explain[s] that a diagnosis of mental retardation does not necessarily follow simply because of

a low IQ score." *Id.* The DSM-IV observes that

"General intellectual functioning is defined by the intelligence quotient (IQ or IQ-equivalent) obtained by assessment with one or more of the standardized, individually administered intelligence tests (e.g., Wechsler Intelligence Scales for Children, 3rd Edition; Stanford-Binet, 4th Edition; Kaufman Assessment Battery for Children). Significantly subaverage intellectual functioning is defined as an IQ of about 70 or below (approximately 2 standard deviations below the mean). . . . Thus, it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior. Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."

*Id.* at 8-9 n.2 (quoting DSM-IV at 41-42). "Indeed, as the DSM-IV makes clear, impairments in

adaptive functioning may be more important in making a finding of mental retardation:

'Impairments in adaptive functioning, rather than a low IQ, are usually the presenting symptoms in individuals with Mental Retardation. Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting. Adaptive functioning may be influenced by various factors, including education, motivation, personality characteristics, social and vocational opportunities, and the mental disorders and general medical conditions that may coexist with Mental Retardation.'"

*Id.* at *8-11 n.2 (quoting DSM-IV at 42).

At issue here is whether Plaintiff met his burden of demonstrating mental retardation with

8

sufficient evidence of deficits in adaptive functioning that began during his childhood. The ALJ found that, although the psychological evaluation in July 2006 indicated that Plaintiff functioned within the mildly retarded range of intelligence, "his scores are within the educable range and there is no evidence of adaptive behavior deficits prior to age 22, especially in light of [Plaintiff's] later ability to perform substantial gainful activity." [DE-13, p.18]. The ALJ further found that "[w]hile [Plaintiff] may have some dependency traits, he has functioned in society, interacted with others, and handled his own finances despite his cognitive deficits." [*Id.*].

Plaintiff argues the greater weight of the evidence indicates significant deficits in his adaptive functioning that manifested before the age of twenty-two, particularly in the area of functional academic skills. *See* Dixon, 2009 U.S. Dist. LEXIS 113346, at *7 (observing that the "plaintiff's enrollment in special education classes, his poor performance in school, his inability to complete the ninth grade, and his lackluster performance on achievement testing is evidence demonstrating deficits in adaptive functioning prior to age 22"). Plaintiff's school transcript reveals that he generally received poor grades and twice failed differential aptitude tests administered under the North Carolina Competency Test Programs. He also dropped out of school in the eleventh grade. Plaintiff scored 79 on an intelligence quotient test he took in January 1975 (at age twelve), and 69 in October 1978 (at age fifteen). As further evidence of skills deficits, Plaintiff notes he never obtained a driver's license and lives at home with his parents. Plaintiff contends these facts constitute significant evidence of deficits in his adaptive functioning and that the ALJ erred in finding otherwise.

While the evidence demonstrates some limitations to Plaintiff's mental functioning, there is nevertheless substantial evidence to support the ALJ's determination that Plaintiff did not exhibit significant adaptive behavioral deficits during childhood. As an initial matter, it should be

9

noted that Plaintiff's evidence centered on his limitations in only one skill area, functional academics. According to the DSM-IV, however, a diagnosis of mental retardation requires finding that an individual has "significant limitations in adaptive functioning in *at least two*" of the skill areas listed (communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety) that manifested before the age of twenty-two. Norris, 2008 U.S. Dist. LEXIS 92635 at *8 n.2 (quoting DSM-IV at 41). Plaintiff presented no evidence of significant limitations in his adaptive functioning that manifested during childhood in a skill area other than functional academics. To the contrary, his school records indicate that when evaluating his social and personal assets, Plaintiff's teachers awarded him average and above-average grades for such qualities as cooperation, courtesy, dependability, industriousness, leadership, maturity, personal appearance, and self-control. [DE-17, p.31]. With regard to the area of functional academic skills, Plaintiff did not attend special education or remedial classes. Plaintiff testified he had no difficulty reading the Bible. [DE-13, p.34]. The evidence moreover shows Plaintiff worked fairly steadily from 1986 until 2005, paid bills, went shopping on a monthly basis, and was able to count change. [DE-17, pp. 4,17; DE-16, p.9]. Thus, while there is evidence of *some* mental limitations, substantial evidence of record supports the ALJ's determination that Plaintiff had no significant limitations in adaptive functioning. *See* Hatfield v. Astrue, No. 5:07-00267, 2008 U.S. Dist. LEXIS 75277, at *36-37 (S.D. W. Va. Sept. 29, 2008) (explaining that the claimant failed to demonstrate deficits in adaptive functioning, as he was not enrolled in special education classes in school, had a lengthy employment history, could read and write, and managed his own finances). Plaintiff's argument to the contrary is unpersuasive.

**B. Plaintiff's mental residual functional capacity ("RFC")**

10

Plaintiff argues the ALJ failed to properly assess his mental RFC. He submits evidence in the record shows he is unable to handle stress, exhibits poor judgment, and cannot follow instructions, and that the ALJ therefore erred in determining he was capable of performing a full range of medium work. The record shows, however, that the ALJ fully considered Plaintiff's mental impairments and their effect on his ability to work when assessing his RFC. Specifically, the ALJ found that Plaintiff's limited intellectual functioning qualified as a severe impairment. [DE-13, p.13]. He then evaluated that impairment and determined that Plaintiff had mild limitations in activities of daily living and social functioning and moderate difficulties with maintaining persistence, pace, and concentration. [DE-13, p.14]. The ALJ expanded on these findings in the RFC determination, concluding that despite his mild and moderate limitations, Plaintiff could nevertheless understand, remember, and carry out instructions; use judgment to make work related decisions; respond to changes in the work setting; and respond appropriately to supervision and co-workers. [DE-13, p.15]. He also held that Plaintiff retained the ability to perform competitive unskilled work on a continuing and sustained basis. [DE-13, p.15]. These findings are supported by Dr. Salmony's evaluation, Plaintiff's work history, as well as other evidence in the record. Inasmuch as Plaintiff asserts the ALJ should have weighed the evidence differently, it is not this Court's role to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. This assignment of error therefore lacks merit.

## C. Plaintiff's Past Relevant Work

Plaintiff argues the ALJ failed to make necessary findings regarding the mental demands of Plaintiff's past work as a janitor before concluding that he was able to return to a janitorial position. Plaintiff, however, bears the burden of showing he is incapable of returning to past

relevant employment.  <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995).  Although Plaintiff correctly notes that the *Dictionary of Occupational Titles* has varying descriptions of the position "janitor," some of which require greater exertional or skill levels than his capabilities, Plaintiff fails to show there are no janitorial positions that he is able to perform.   This assignment of error is therefore overruled.

**VI.      Conclusion**

For the reasons discussed above, it is RECOMMENDED that Plaintiff's motion for judgment on the pleadings [DE-26] be DENIED, that Defendant's motion for judgment on the pleadings [DE-28] be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, June 24, 2011.


_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE